UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GEORGIA CAROL CARTER, | ) |
| Appellant, | ) ) ) |
| v. | ) Case No. 1:15-cv-01938-TWP-MPB ) |
| HSBC MORTGAGE SERVICES, INC., HSBC BANK USA, NATIONAL ASSOCIATION, KAREN A. BARBADAES, TRICIA BRAGG, MARIA S. SCOTT, and JOHN DOES 1-10, | ) ) ) ) ) |
| Appellees. | ) |

**ENTRY ON DEFENDANTS HSBC MORTGAGE SERVICES INC. AND HSBC BANK USA, NATIONAL ASSOCIATION'S MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants HSBC Mortgage Services, Inc. ("HSBC") and HSBC Bank USA, National Association (collectively, "the Defendants"). (Filing No. 5.) After paying HSBC a total of $31,611.63 through a bankruptcy proceeding, Plaintiff Georgia Carol Carter ("Ms. Carter"), filed a Complaint alleging violation of the automatic stay, Racketeer Influenced and Corrupt Organizations Act ("RICO"), RICO conspiracy, actual fraud, constructive fraud, restitution, and unjust enrichment. (Filing No. 2.) The Defendants seek to dismiss Ms. Carter's Complaint for failure to state a claim. For the following reasons, the Court **GRANTS** the Motion to Dismiss.

### I. BACKGROUND

In July 2003, Ms. Carter obtained a mortgage with Accredited Home Lenders, Inc. for $71,000.00. The mortgage was secured by Ms. Carter's residence, located at 1233 South Whittier Place, Indianapolis, Indiana. (Filing No. 2 at 8, ¶ 12.) The mortgage was later transferred to

Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS serves as a nominee on mortgages and its parent company owns and operates an electronic registry which is designed to track and service rights and ownership of mortgages and mortgage backed securities. *Id.* Unbeknownst to Ms. Carter, on July 27, 2009, MERS recorded a Satisfaction of Mortgage, releasing the secured mortgage on Ms. Carter's residence. *Id.* at 9, ¶ 22. At some point, HSBC began servicing Ms. Carter's mortgage. Id. at 2 ¶6. After the Satisfaction of Mortgage was recorded, Ms. Carter received telephone calls from HSBC stating that her residence would be foreclosed upon if she did not pay $6,000.00. *Id.* at 10, ¶ 25. In fear of losing her residence, on May 4, 2010, Ms. Carter filed a voluntary petition under Chapter 13 of the Bankruptcy Code. *Id*. at 10, ¶ 26.

On July 13, 2010, HSBC filed a proof of claim in Ms. Carter's bankruptcy case, alleging a secured claim in the amount of $60,820.16. *Id*. at 10, ¶ 30. In October 2010, Ms. Carter's bankruptcy plan was confirmed. (Filing No. 6 at 3.) From September 2010 to August 2014, Ms. Carter made monthly payments to the Trustee, who in turn paid HSBC a total of $31,611.63. (Filing No. 2 at 12, ¶ 47.) This consisted of $24,088.32 for post-filing mortgage payments and payments of $7,523.31 in pre-petition arrears. *Id.* On July 9, 2013, HSBC filed a withdrawal of its proof of claim. *Id*. at 10, ¶34. Nearly four months later, on November 7, 2013, HSBC amended its withdrawal by reducing only the amount of arrears. *Id.* at 11, ¶ 35. HSBC filed another amended proof of claim on December 22, 2014 withdrawing its rights to receive any additional payments. *Id.* at 11, ¶ 40.

In March 2015, Ms. Carter visited the Marion County Recorder's office to determine who the lienholder of her mortgage was, so that she could begin making mortgage payments directly to the mortgage company. (Filing No. 2 at 39). On this occasion, she learned of the Satisfaction of

Mortgage record and notified her attorney. (Filing No. 2. at 12, ¶ 43). In July 2015, the Chapter 13 Trustee filed an objection to HSBC's secured claim. The Bankruptcy Court sustained the objection in August 2015 and ordered HSBC to repay the $31,611.63 it received from the Trustee under the bankruptcy plan. HSBC repaid the amount in its entirety. On August 6, 2015, Ms. Carter sought relief by filing a Complaint in the bankruptcy court, alleging that the Defendants willfully filed a false proof of claim in violation of the automatic stay, RICO, RICO conspiracy, actual fraud, constructive fraud, restitution, and unjust enrichment. (Filing No. 2.) On December 9, 2015, the bankruptcy court judge recommended withdrawal of the reference of this adversary proceeding. On December 17, 2016, this Court instructed the parties to refile their pleadings in the district court. (Filing No. 4.) On December 28, 2015, the Defendants filed the instant Motion to Dismiss.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

While a complaint need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated differently, the

complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

The Defendants argue that the Complaint should be dismissed because Ms. Carter failed to state sufficient facts to support claims of automatic stay violation, RICO, RICO conspiracy, actual fraud, constructive fraud, restitution, and unjust enrichment. They also argue in the alternative, that Ms. Carter's actual fraud, constructive fraud, unjust enrichment, and restitution claims are preempted by the federal Bankruptcy Code. (Filing No. 5.) Each claim is addressed below.

**A.  Automatic Stay Violation**

Ms. Carter asserts in Count I of her Complaint that the Defendants violated the automatic stay provision under the Bankruptcy Code by collecting on a debt falsely labeled "secured by real-estate," when in fact the debt owed to HSBC was unsecured. The "automatic stay" bars, among other things, any "act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case."  11 U.S.C. § 362(a)(6). The purpose of the automatic stay is to "preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured," in order to prevent a "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) (citing *In re Frigitemp Corp.*, 8 B.R. 284, 289 (D.C.S.D.N.Y.1981)).

The Defendants contend that they never attempted to recover a debt in violation of the automatic stay provision because payments from the Trustee to HSBC were made pursuant to a confirmed bankruptcy plan.  Confirmation of a bankruptcy plan triggers a Chapter 13 trustee's duty to distribute funds received from the debtor to creditors.  *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015); 11 U.S.C. § 1326(a)(2).  Ms. Carter argues that the Defendants received payments prior to confirmation of a bankruptcy plan in violation of the automatic stay.  However, it is undisputed that at the time of Ms. Carter's bankruptcy filing, the Defendants were thought to have a secured interest in Ms. Carter's residence.  This mistaken belief was shared by Ms. Carter as well as the creditor, HSBC.  It is also clear from Ms. Carter's Exhibit 4, that the pre-confirmation payments, made September 2 and October 1, 2010, amounted to "adequate protection" payments.  ([Filing No. 2 at 60-61](#).)  "The Bankruptcy Code provides secured creditors various rights, including the right to *adequate protection*, and these rights replace the protection afforded by possession."  *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 207 (1983) (emphasis added).  Under the Bankruptcy Code, a debtor is required to "commence making payments not later than 30 days after the date of filing of the plan or the order for relief, whichever is earlier, in the amount that …. provides *adequate protection* directly to a creditor holding an allowed claim secured by personal property . . . ."  11 U.S.C. § 1326 (a)(1)(C) (emphasis added).  Thus, the payments that the Defendants received did not violate the bankruptcy stay because the Trustee made the bankruptcy plan payments as required under the bankruptcy plan.  In other words, once the bankruptcy was filed, HSBC Bank never attempted to recover a claim directly against Ms. Carter, rather they filed a claim and received bankruptcy plan payments from the Trustee, as permitted by the Bankruptcy Code.  Ms. Carter has not presented evidence that the Defendants acted outside of the bankruptcy

process to receive payments from the Trustee. Accordingly, the motion to dismiss Ms. Carter's claim of violation of the automatic stay is **GRANTED**.

### B.  RICO Claims

Count II of Ms. Carter's Complaint asserts a civil RICO claim, alleging that Defendants HSBC, HSBC Bank, along with HSBC employees, Karen A. Barbadaes ("Barbadaes"), Tricia Bragg ("Bragg") and Maria S. Scott (collectively, the "RICO Defendants") engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c) for the purpose of defrauding Ms. Carter of money and property. In particular, Ms. Carter alleges the RICO Defendants committed wire fraud, mail fraud, interstate transportation of stolen property and extortion. In the alternative, Count III asserts a RICO conspiracy claim, alleging that the RICO Defendants are liable as conspirators under 18 U.S.C. 1962(d).

To state a claim under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

> A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. . . . Predicate acts are acts indictable under a specified list of criminal laws . . . including mail fraud under 18 U.S.C. § 1341, and wire fraud under 18 U.S.C. § 1343.

*Id.* (citing 18 U.S.C. § 1961). The Defendants argue that Ms. Carter has not met the heightened pleading requirements under Federal Rule of Civil Procedure 9(b). Specifically, they explain that Ms. Carter has not alleged that they or any of the RICO Defendants engaged in any particular racketeering activity, has failed to allege a person who directed or controlled an enterprise separate and apart from Defendants, and failed to assert that the Defendants engaged in a pattern of racketeering activity. (Filing No. 6 at 10.) The Court will address each element in turn:

6

1. **Racketeering Activity**

The Defendants argue that Ms. Carter failed to satisfy the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) in alleging a pattern of wire or mail fraud, interstate transportation of stolen property, or extortion. No facts have been alleged that are sufficient to support an extortion charge. The federal criminal code defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Ms. Carter's allegation that she feared her home would be foreclosed upon and fear of losing her home is insufficient to establish extortion. There is no evidence that the RICO Defendants intended to put her in fear or that her fear was reasonable to constitute an extortion.

To state a claim for mail and wire fraud, Ms. Carter must plead (1) that the Defendants participated in a "scheme to defraud;" (2) with the intent to defraud; and (3) that the Defendants used a wire communication or the mail to further the scheme. *See* 18 U.S.C. §§ 1341, 1343; *United States v. Briscoe*, 65 F.3d 576, 583 (7th Cir. 1995). The heightened pleading standard in Rule 9(b) also applies to allegations of mail and wire fraud, "including where those offenses are alleged to comprise predicate acts of a RICO pattern." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1050 (7th Cir. 1998). "To satisfy the particularity requirement, we have required a RICO plaintiff to allege the time, place, and content of an allegedly fraudulent communication, as well as the parties to that communication." *Id.* Count II of Ms. Carter's Complaint explicitly specifies the type of communication alleged to have been made, the date, and who the communication was to and from, including a table detailing all of this information at paragraph 59. (Filing No. 2 at 13-20.) Ms. Carter does not "lump together" HSBC and all of the RICO Defendants as argued in the

brief in support of the motion to dismiss.  The Court finds that the level of detail contained in the Complaint meets the heightened pleading requirements of Rule 9(b).

The same is true for Ms. Carter's allegations that HSBC and the RICO Defendants engaged in the interstate transportation of stolen property.  In RICO cases, "the complaint must, at a minimum, describe [fraud-based] predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetuating the fraud.'" *Perlman v. Zell*, 938 F. Supp. 1327, 1348 (N.D. Ill. 1996) *aff'd,* 185 F.3d 850 (7th Cir. 1999) (quoting *Midwest Grinding Co., Inc.*, 976 F.2d at 1020).  As discussed above, Ms. Carter has alleged the time, place and content of the communications giving rise to the alleged interstate transportation of stolen property.  In addition, paragraphs 62 through 65 of the Complaint set forth the relevant facts regarding the predicate act. Specifically, Paragraph 63 states where Ms. Carter's money is alleged to have been transferred, specifically to HSBC in Florida, and the manner by which the funds are alleged to have been transferred.  ([Filing No. 2 at 20.](Filing No. 2 at 20.))  While plaintiffs are required to satisfy the requirements of Rules 8 and 9, they are not also required to plead facts that would prove their entire case in the complaint.  *Emery v. Am. Gen. Fin.*, 134 F.3d 1321, 1323 (7th Cir. 1997).  The Court concludes that Ms. Carter has adequately pled the predicate acts underlying her RICO claims for fraud and interstate transportation of stolen property against the Defendants.

     2.     **Enterprise**

The Defendants also argue that Ms. Carter failed to plead a RICO enterprise under § 1962(c).  The Defendants assert that Ms. Carter does not identify an enterprise distinct from the named Defendants, and does not identify each Defendant's specific participation in the alleged scheme.  "A RICO enterprise 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal

8

entity.'" *Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 908 (N.D. Ind. 2013) (quoting 18 U.S.C. § 1961(4)). An association-in-fact enterprise must also have some sort of "structure," consisting of "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States,* 556 U.S. 938, 946 (2009). Ms. Carter pled, in the alternative, both enterprise and association-in-fact enterprise. (Filing No. 2 at 24-27.) For each alleged association-in-fact enterprise, Ms. Carter asserts that the members acted for a common purpose, that they are related in a way that they are all involved in the operation and management of collections on behalf of HSBC, and that they possessed sufficient longevity for the members to carry out the purpose. Accordingly, the Court finds that Ms. Carter has adequately pled the existence of an enterprise in the Complaint.

### 3. Pattern of Racketeering Activity

The Defendants also assert that Ms. Carter failed to meet the "pattern" requirement. "To establish a RICO pattern it must be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 240 (1989). "Continuity" is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 242. Closed-period continuity may be proven by a series of related predicates extending over a substantial period of time. *Id.* Relevant factors include: 1) the number and variety of predicate acts, 2) the length of time over which the predicate acts were committed, 3) the number of victims, 4) the presence of separate schemes, and 5) the occurrence of distinct injuries. *Morgan v. Bank of Waukegan*, 804 F. 2d 970, 975 (7th Cir. 1986). "No one factor is determinative." *Id.* at 975–76.

Relying on *U.S. Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261 (7th Cir. 1990), the Defendants contend that Ms. Carter's RICO claims fail because they derive from one fraudulent proof of claim and Ms. Carter is the only victim with a single injury. A "'natural and common sense' approach to the pattern element of RICO would instruct that identical economic injuries suffered over the course of [several] years stemming from a single contract were not the type of injuries Congress intended to compensate via the civil provisions of RICO." *Id.* at 1269. Although Ms. Carter alleges mail and wire fraud, extortion, and interstate transportation of stolen property, these claims derive from a single proof of claim filed on July 13, 2010, that was merely amended over the course of five years. Ms. Carter is the only victim who suffered an injury. "RICO is not aimed at the isolated offender." *Id* at 1268 (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Additionally, all of the alleged conduct relates back to a single act-the filing of the claim in July 2010. Accordingly, this Court finds that a pattern of racketeering activity does not exist because there is no threat of continuing criminal conduct.

As previously discussed, although the Court has found that Ms. Carter's level of detail goes well beyond what is required under Rule 9(b), she has failed to establish a "pattern" of racketeering activity. To avoid dismissal of a racketeering claim, the complaint must plead sufficient and specific fact that support *each* of the four elements. *See Goren v. New Vision Int'l Inc*. 156 .3d 27 (7th Cir. 1998) (emphasis added). Accordingly, the motion to dismiss Ms. Carter's RICO claims is **GRANTED**.

C.     **Actual and Constructive Fraud**

The Defendants argue that Ms. Carter failed to plead her claims in Count IV and V for fraud and constructive fraud with specificity as required by Rule 9(b).

1.     **Actual Fraud**

To state a claim for actual fraud under Indiana law, Ms. Carter must plead (1) a material misrepresentation of past or existing facts by a particular defendant; (2) which was false; (3) which was made with knowledge or reckless ignorance of the falseness; (4) which was relied upon by Ms. Carter; and (5) which proximately caused Ms. Carter's injury. *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996). She alleges that the wrongful acts and false representation made by HSBC's employees should be imputed to HSBC under the theories of agency, alter ego, veil-piercing and respondent superior ([Filing No. 2 at 28](Filing No. 2 at 28) ¶ 109). As discussed in the context of her RICO claims, Ms. Carter has adequately pled which Defendants (including RICO Defendants) made the alleged misrepresentations, as well as when, where and how. This satisfies the "who, what, when, where, and how" requirement of Rule 9(b). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). However, the Defendants argue that Ms. Carter has not suffered any damages because HSBC repaid the Trustee all of the funds it received under the bankruptcy plan. Ms. Carter admits that she was repaid but argues that she still has financial losses that include administration costs and the costs for filing the Chapter 13 bankruptcy. However, Ms. Carter has not presented sufficient evidence that the Defendants are the proximate cause of these costs. Accordingly, the motion to dismiss Ms. Carter's actual fraud claim is **GRANTED**.

  2. **Constructive Fraud**

With respect to the constructive fraud claim, Ms. Carter must plead (1) a duty existing by virtue of the relationship between the parties; (2) representations or omissions made in violation of that duty; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the defendant at the expense of the plaintiff. *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1315-16 (Ind. Ct. App. 1993). The Defendants again argue only that Ms. Carter failed to establish the necessary element of

"injury" because the Trustee was repaid in full.  Ms. Carter relies on her argument that a financial loss remains, which includes administration costs and the costs for filing the Chapter 13 bankruptcy.  Again, Ms. Carter has not presented sufficient evidence that the Defendants are the proximate cause of these costs, nor has Ms. Carter alleged that the Defendants gained any advantage.  Because the Defendants repaid the Trustee the entire amount owed, the motion to dismiss this claim is **GRANTED**.

### D.   Unjust Enrichment and Restitution

In Counts VI (restitution) and VII (unjust enrichment), Ms. Carter seeks actual damages of monies unlawfully collected by the Trustee during the six year period, litigation expenses and costs of this action.  Indiana law recognizes a claim for unjust enrichment when a "measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *See Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009).  The Defendants allege that Ms. Carter's claims for unjust enrichment and restitution should be dismissed because HSBC repaid the $31,611.63 it received from the Trustee.  In reply, Ms. Carter agrees that the Defendants repaid the amount owed but asserts that she still has "concrete financial losses" as discussed above.  "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id*.  However, "restitution is an equitable remedy, distinct from damages, that remedies a defendant's unjust enrichment, not a plaintiff's loss." *Rollings v. Smith*, 716 N.E.2d 502, 507 (Ind. Ct. App. 1999).  The filing fees and administrative costs amount only to Ms. Carter's loss and not a measurable benefit conferred upon the Defendants.  The Defendants repaid the Trustee who then repaid Ms. Carter in full, accordingly the motion to dismiss her unjust enrichment and restitution claims are **GRANTED**.

### E. Bankruptcy Preemption

Even if the Court were to find that Ms. Carter has established her claims for actual fraud, constructive fraud, unjust enrichment, and restitution, the Defendants argue in the alternative, that these claims are preempted by the federal Bankruptcy Code. "Preemption can take on three different forms: express preemption, field preemption, and conflict preemption." *Bible v. United Student Aid Funds, Inc.,* 799 F.3d 633, 652 (7th Cir. 2015) (quoting *Aux Sable Liquid Products v. Murphy,* 526 F.3d 1028, 1033 (7th Cir.2008)). The Defendants assert field preemption. Field preemption "confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *In re Repository Techs., Inc.,* 601 F.3d 710, 722 (7th Cir. 2010) (citing *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)). The Defendants rely on *Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 913 (7th Cir. 2001) when arguing that Congress intended to occupy the entire field of bankruptcy. The *Cox* court, citing *Pertuso v. Ford Motor* 233 F.3d 417, 426 (6th Cir; 2000), noted that "state-law claims that attempt to govern the same activity regulated by the Bankruptcy Code are expressly preempted because Congress intended to occupy the entire field by providing exclusive remedies in the Bankruptcy Code."

Ms. Carter's state law claims of actual fraud, constructive fraud, unjust enrichment and restitution are based solely on the Defendants filing a false proof of claim in Ms. Carter's bankruptcy proceeding and receiving payments under the confirmed plan. "Remedies against an improper debt-affirmation agreement contended to violate the Bankruptcy Code are a matter exclusively of federal bankruptcy law." *Cox at* 913 (7th Cir. 2001), *Bessette v. Avco Financial Services*, 230 F.3d 439, 447-48 (1st Cir. 2000); *See also Grede v. FCStone, LLC*, 746 F.3d 244,

259 (7th Cir. 2014). Accordingly, Ms. Carter's state law claims are preempted by the Bankruptcy Code and the motion to dismiss those claims are **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, the Defendants HSBC Mortgage Services Inc.'s and HSBC Bank USA, National Association's Motion to Dismiss (Filing No. 5) is **GRANTED**.

No partial judgment will issue at this time because claims remain pending with respect to the *pro se* Defendants and John Doe Defendants.

**SO ORDERED.**

Date: 9/21/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Karen A. Barbadaes
636 Grand Regency Blvd.
Brandon, Florida  33510

Maria S. Scott
636 Grand Regency Blvd
Brandon, Florida  33510

Robert D. Cheesebourough
rdc@home-saver.org

Tricia Bragg
636 Grand Regency Blvd.
Brandon, Florida  33510

Matthew D. Boruta
MATTHEW D. BORUTA
boruta17@hotmail.com

Jacob V. Bradley
QUARLES & BRADY LLP (Indianapolis)
jacob.bradley@quarles.com

Lucy Renee Dollens
QUARLES & BRADY LLP (Indianapolis)
lucy.dollens@quarles.com